41 C.C.P.A.(Patents)

**Application of THIBAUT.**

**Patent Appeals No. 5972.**

United States Court of Customs
and Patent Appeals.
March 23, 1954.

Morris Hirsch, New York City (J. Preston Swecker, Washington, D C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner in rejecting claims 73 to 76, inclusive, in appellant's application for a patent for "Method and Devices For the Treatment of Solid or Liquid Carbonaceous Materials." One claim was allowed. The instant claims were rejected as unpatentable over the prior art.

Claim 73, upon which the other claims depend, is illustrative of appellant's process. It reads:

"73. A process for transforming carbonaceous material into useful hydrocarbons which consists in introducing in liquid form solely at the upper part of a column, the carbonaceous material to be treated, for gravity flow downward and introducing at the lower part of such column a previously heated hydrogenating gas, bubbling such gas through the liquid carbonaceous material in its upward flow in sequence through each of a plurality of zones of the column to effect selective hydrogenation and concurrent selective fractionation, thereat, with release at each such zone of the lighter hydrocarbons thus selectively hydrogenated and selectively fractionated, withdrawing from the column at each such zone such lighter hydrocarbons that have been released thereat and passing the residue from each such zone to a lower zone for the selective hydrogenation and concurrent selective fractionation thereat, withdrawing from the top of the column those lighter hydrocarbons resulting from the action of such hydrogenating gas as has passed upward through the entire height of the column, while removing from the bottom of the column the unconverted residues of carbonaceous material that have passed downward through the height of the column."

Appellant's invention relates to a process for treating carbonaceous material to accomplish fractionation and concomitant hydrogenation in a predetermined manner. He describes his process as follows:

" * * * the crude substance to be treated, which is carbonaceous material either in liquid form or in form of a dispersion or suspension in a carrying liquid, is admitted laterally near the top of a column and passes downwardly through succes-

sive stages between plates. A suitable catalyzer is supported by a wire screen spaced about each plate. The hydrogenating gas is admitted through the bottom of the column and bubbles through the various caps for contact with the pool of liquid resting on each plate, at each of which a predetermined temperature is maintained. At each stage or zone defined by the space between consecutive plates there is thus performed a chemical, thermal and catalytic treatment, for fractionation and concurrent hydrogenation.

"More particularly, the initially crude substance is thus progressively subjected to fractionation at various zones in the column, while the hydrogenating gas is bubbled for prolonged periods through the pools of liquid that rest on various plates for liquid phase hydrogenation thereof. The lighter vapor products that are fractionated from the liquid in the pool at each zone move upward through the catalyzer thereabove for further vapor phase hydrogenation, while the heavier product overflows through down-pipes by gravity from the pool on each plate to the next lower plate. Through a pipe the lightest product of selective treatment is passed off at the top of the column and the heavy residues through a pipe at the bottom. At different stages, the intermediary products can be extracted in a gaseous or liquid stage.

"In this manner the hydrogenation and fractionation are performed simultaneously upon crude substance introduced in liquid form near the top of the column and selected fractions of diverse predetermined character are withdrawn at various stages including the final stage at the top of the column."

The references relied on are: Pier et al. 1,938,542 December 5, 1933; Trumble et al. 1,948,908 February 27, 1934.

The patent to Pier et al. discloses catalytic hydrogenation of either a liquid hydrocarbon oil alone or a liquid hydrocarbon oil containing a solid carbonaceous material in suspension. In one modification the material is fed into the column near the top and the countercurrent gases are introduced at the bottom of the column. There is no suggestion that fractionation occurs.

It was stated by the tribunals of the Patent Office that Trumble et al., upon which rejection was principally based, disclose dephlegmation (cracking) and hydrogenation apparatus wherein hydrocarbon vapors and hydrogen gas are simultaneously introduced near the bottom of the column. That material, in its upward passage, is exposed to catalysts placed on a screen over a plate in a plurality of zones. Desired temperatures, maintained at each zone, vary progressively from a higher temperature at the lowest stage to a lower temperature at the highest stage. During upward passage the hydrocarbon vapors and the hydrogen gas are subjected to catalytic hydrogenation at each of the zones. At the top of the column a cooling unit is provided which serves to condense in a pan under the cooling unit that portion of the material which is not released in vapor form through an outlet at the top of the column. They also stated that simultaneous dephlegmation and catalytic hydrogenation occur during the downward passage from the pan of the condensate or liquid reflux.

The examiner rejected the involved claims on lack of invention over the references. The board sustained that action.

Here appellant renews his contentions that his process is patentably distinct from the references, particularly Trumble et al. in four respects, namely:

"(a) introducing in *liquid* form *solely* at the upper part of a column, the carbonaceous material to be treated;

"(b) *bubbling* previously heated hydrogenating gas through the liquid carbonaceous material;

"(c) effecting *selective* hydrogenation and concurrent selective fractionation at each zone;

"(d) withdrawing from the column *at each zone* the lighter hydrocarbons released thereat." (Italics quoted.)

When this appeal was first heard we did not clearly comprehend the technical nature of the alleged differences set out above, nor the degree to which they were encompassed by the claims. In order to clarify those matters the court requested a reargument. We express our appreciation to counsel for their cooperation.

We turn now to consideration of the first contention; namely whether introduction in liquid form solely at the upper part of a column of the carbonaceous material to be treated constitutes invention over the references. While it is true, as urged by appellant, that the material originally introduced in Trumble et al. consists of hydrocarbon vapors and hydrogenating gas and is initially introduced near the bottom of the column, it is likewise true that after condensation it becomes a liquid and in that form overflows the edge of the pan near the top of the column and, as thus introduced, descends through the several zones thereof. Even if it be assumed that the Trumble et al. patent is limited to the introduction of vapors only at the lower end of the column, Pier et al. clearly disclose the introduction at the top of their column of material similar to that employed by appellant.

The next alleged difference is that of the "bubbling" of previously heated hydrogenating gas through the liquid carbonaceous material. Appellant argues that there is no "bubbling" of gas through the liquid in the Trumble et al. process. That patent discloses that the upper edge of the condensation pan "is spaced a short distance below the lower end of the cooling tube assemblage both for the upward passage of gases and vapors from the cylinder through the tubes, as well as for marginal overflow of reflux oil for dribbling back through the screens and over the shelf-like ar-

rangement of plates to the oil compartment at the bottom of the cylinder." The Board was of the opinion that under such conditions of downward liquid flow and countercurrent gas and vapor flow at least some degree of bubbling of gas through the liquid was considered inevitable. Be that as it may, use of bubbling caps and the principle of bubbling is so old in the art as to justify our taking judicial notice thereof. Moreover, we are disposed to agree with the solicitor that the term "bubbling" as used in the involved claim, does not necessarily imply the use of "bubbling caps" in "pools of liquid" and "prolonged exposure" of the latter to gas to the extent appellant seems to suppose. If the term "bubbling" is as critical to appellant's process as he now urges, it might well have been more precisely stated in the claims. In any event, it is not seen where this step in appellant's process constitutes a patentable distinction over the references of record.

We think a negative answer to the third contention of appellant pertaining to "selective hydrogenation and concurrent selective fractionation at each zone" is required by the following language from the patent to Trumble et al.:

"As the apparatus is heating up, the reflux oil is run through [a] bypass but after the temperatures of the various zones are secured the pipe is shut off so that the reflux oil returns counterflow to the ascending gases. Thus the gases are successively passed over coils of various temperatures with alternate submission to the action of hydrogen in the inverted cups and the influence of the catalyst carried on the screens, while the returning oil from above meets the same steps of temperature in reverse order, so that the various fractions are submitted to vapor phase hydrogenation at a plurality of temperatures so as to present each at a temperature suitable for its reaction, and the returning oil is resubmitted to these vari-

ous temperatures for liquid phase hydrogenation."

It would thus seem that the Trumble et al. device carries out selective fractionation in the several zones and that hydrogenation is performed individually on the various fractions at the desired temperatures. In view of the characteristics common to both appellant and Trumble et al., specifically in relation to their use of the zones, catalytic agents, desired temperatures, and counter-current flow, it would seem that if selective hydrogenation and selective fractionation occur in one that substantially the same result would occur in the other.

With respect to the final alleged difference of withdrawing from the column at each zone the lighter hydrocarbons there present, appellant contends that although Trumble et al. went to the trouble of providing for manual access at each zone for heating means and the introduction of catalysts, still no provision was made for withdrawal of the various products other than at the top and bottom of the column. However, we think it hardly possible to conclude from a reading of the patent to Trumble et al. that the patentees were not aware of the fact that different fractions were produced in the several treatment zones. Consequently, whether it was desirable to withdraw them at intermediate points or at either end, as was done, is quite obviously a matter of choice.

Two other points raised by appellant require consideration. He alleges that the disclosure of simultaneous cracking and hydrogenating is not found in the Trumble et al. patent itself but only in a co-pending application referred to therein. In support of that position he quotes a part of Trumble et al. but surprisingly omits a significant portion thereof. We quote below the entire paragraph, italicizing that portion omitted by appellant, which clearly answers his contention.

"*Another object is to provide a more efficient method of dephlegmation and hydrogenation by combin-*

*ing the same,* still another object is the provision of apparatus which may be used to advantage in almost any cracking or hydrogenating plant for separating of the reflux oil and hydrogenating the vapors."

Notice has been taken of the affidavit of appellant alleging commercial success but in view of our conclusion that the board did not err it is not necessary to discuss it.

The decision of the Board of Appeals is hereby affirmed.

Affirmed.